## Miller et al. v. Richards et al.

October 21, 1947.

Jay W. Harlan, Special Judge.

Wm. Russell Jones for appellants.

B. J. Bethurum, C. Homer Neikirk, Ben D. Smith, R. C. Tartar, Gladstone Wesley, and W. N. Flippin for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

E. J. Richards and his wife, appellees, the owners of legal title to certain real estate, filed in this action their exceptions to the master commissioner's report of sale encompassing such real estate.

G. D. Bell and others, appellants, the purchasers of this real estate at such sale, opposed these exceptions and joined issue on the question of a consummation of this sale.

The chancellor overruled the exceptions as to that part of the sale involving what we would call the north-side property. And to this part of the judgment there has been no cross-appeal under Sec. 755, Ky. Civil Code of Practice. Therefore, we are not authorized to consider the chancellor's judgment overruling exceptions to the sale of the northside property.

The chancellor sustained the exceptions as to that part of the sale involving what we would call the south-side property. And to this part of the judgment, this appeal has been perfected.

The contention is now made that the chancellor abused his discretion and rendered his judgment contrary to the preponderance of all the evidence pertaining to the impropriety of the sale of the southside property.

This record reveals that this entire sale of both properties occurred on October 23, 24, 1944, and that it produced far less than the amount of the total indebtedness this action was seeking to satisfy. In fact, the

sale brought slightly less than 50% of the outstanding indebtedness.

The southside property was officially appraised at $8,685. But upon this sale, it brought $11,098. And so, the relation between the appraisal and the sale price was persuasively and entirely in favor of a confirmation. However, a chancellor is never, in deciding whether a sale should be confirmed, limited to an examination of the official appraisal, which may be ultraconservative or just decidedly erroneous, even though totally free from any kind of fraud.

Evidence was produced tending to show that Richards, who had been out of the state serving with the armed forces but who had waived his suspension rights provided by law for the benefit of soldiers and sailors in time of war, had arrived in Somerset only the Sunday afternoon before this sale of the following day; that he had no regularly hired attorney employed exclusively to look after his individual rights in this case; that he did not know, until his arrival in Somerset, the specific method about to be employed in making this sale nor the advertising that had been adopted as a preliminary step prior to the sale; that while the best possible method was actually used in carrying out this sale, yet another and less advantageous method of sale had been previously advertised as the one that would be used; that there was a variation between the manner of sale as it was accomplished and the manner of sale as it had been previously advertised for accomplishment; that this property, located within the city limits of Somerset, is partly served with electric power lines and sanitary sewers and partly excavated for basements on some of the individual lots; that this property consists of 52 separate lots and also 1 five acre tract; that Federal Housing Administration had approved, at sometime previous to this litigation, the layout of this southside property and had then appraised, for future FHA loans thereon, its value at $53,250, which is just $42,152 above the price produced by this master commissioner's sale.

On the other side of the picture, evidence was produced by the purchasers showing that Richards was present in person during this entire sale; that he offered no objection during its progress; that this sale, besides

having produced more than the amount of the official appraisal, clearly produced the full worth of this property according to its true value on the selling date; that a representative crowd was present during the sale; that no fraud pertaining to any part of this sale was practiced by anyone concerned therewith.

The chancellor considered all the evidence pertaining to the real worth of this property as compared to its sale price, and he also considered the undisputed evidence as to the slight variation that took place between the advertised plan of sale and the executed plan of sale. On the basis of these two considerations, viz., the sale price, proven by several witnesses to have been inadequate, and the undisputed though slight variation previously mentioned, the chancellor adjudged that these exceptions should be sustained.

It seems that this court has held in quite a number of cases that a price inadequacy coupled with some slight irregularity of sale constitute a combination calculated to be a sufficient justification for vacating a judicial sale by a chancellor acting within his discretion. Kentucky Joint Land Bank of Lexington v. Fitzpatrick, 237 Ky. 624, 36 S. W. 2d 25; Koontz v. Butler, 238 Ky. 406, 38 S. W. 2d 204; Louisville Title Co. v. Ramsey, 258 Ky. 183, 79 S. W. 2d 693; Henderson v. Henderson, 266 Ky. 319, 98 S. W. 2d 904; Allen v. Francis, 292 Ky. 412, 166 S. W. 2d 877.

Since the chancellor acted within the scope of an apparently well established legal principle, which we have heretofore recognized in many cases, we are not prepared to say that he abused his discretion. In fact, we find ourselves persuaded to the contrary after an earnest and thorough consideration of this entire record.

Wherefore, the judgment is affirmed.